## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| J. C. PENNEY COMPANY, INC. *et al.*,[1] | § | **Case No. 20-20182** |
| | § | |
| | § | |
| Debtors. | § | **Chapter 11** |
| ---------------------------------------------------- | § | -------------------------------------------------------------- |
| | § | |
| AD HOC COMMITTEE OF | § | |
| EQUITY INTEREST HOLDERS, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | **Civil Action No. 2:20cv280** |
| | § | |
| J.C. PENNEY COMPANY, INC. *et al.*, | § | |
| | § | |
| Appellees. | § | |

### AD HOC EQUITY COMMITTEE'S
### EMERGENCY MOTION FOR STAY PENDING APPEAL

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at **http://cases.primeclerk.com/JCPenney**.  The location of the Debtor J.C. Penney Company, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 6501 Legacy Drive, Plano, Texas 75024.

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The Ad Hoc Committee of Equity Interest Holders (the "AHEC" or "Shareholders") of J.C. Penney Company, Inc., *et al.* (the "Debtors" or "JCPenney"), hereby files this *Emergency Motion for Stay Pending Appeal* (the "Motion"), and in support hereof, respectfully states as follows:

## SUMMARY OF RELEVANT BACKGROUND AND RELIEF REQUSTED

When given the opportunity, JC Penney's counsel reminds the world that the JC Penney bankruptcy filing saved over 60,000 jobs. While this may be true, they fail to mention that the JC Penney bankruptcy was nothing more than a scheme devised by two groups of people who were only worried about getting richer. The other, untold story is that the JC Penney employees, along with countless mom and pop investors (the "AHEC" or "Shareholders") stand to lose all of their equity interest in JC Penney as a result of the tragic plan – transferring the classic value of all shareholders, future capital appreciation, to secured lenders.

Who are these two groups? First, there are the secured first lienholders who were owed approximately $2.4 billion by JC Penney prior to the bankruptcy filing ("First Lienholders"). The second group involved in this scheme are the top executives at JC Penney ("Management Team"). The First Lienholders and the Management Team were well aware that JC Penney's assets at the time of filing exceeded $8.4B – more than enough value to satisfy all allowed creditor claims, and still provide a return to equity. However, an orderly liquidation would not have benefited either of these groups like the plan they ended up with – payment in full is just not satisfactory. They want more – much more.

A brief review of this bankruptcy case sheds light on how we got to this appeal. Although JC Penney entered bankruptcy with sufficient assets to pay its secured creditors and still generate a return to equity, JC Penney immediately asked the bankruptcy court for authority to borrow an

2

additional $900M after the bankruptcy case was filed ("DIP Loan").  The Debtors provided the Bankruptcy Court with a dire report where they claimed that JC Penney was facing a severe cash shortage as a result of the COVID-19 pandemic, and expressed fear of their ultimate demise if the Bankruptcy Court did not authorize JC Penney to borrow the $900M from the First Lienholders.

Obtaining a DIP Loan from the First Lienholders was a crucial part of their plan, as the DIP Lender (*i.e.* First Lienholder) would obtain a super-priority first lien on all assets, and they could eventually obtain possession all of the assets from the Debtor by simply credit bidding the $900M.  This gave the First Lienholders total control over the bankruptcy.  The Management Team were incentivized to make sure the DIP Lender ended up purchasing the assets, as this would provide the Management Team with personal releases, protect the extraordinary bonuses obtained on the eve of the bankruptcy filing, and guarantee continued employment in the newly reorganized company.  Therefore, the Management Team and the First Lienholders had every reason to convince the Bankruptcy Court to authorize the $900 million DIP loan.

In order to obtain the DIP Loan, the Debtors painted a picture that never came true.  First, the Debtors claimed that they would run out of money by August, 2020 if the Court did not approve the DIP Loan. That never happened.  In fact, by the time the Debtors appeared for the final hearing on approval of the DIP Loan, the Debtors had accumulated approximately $537 million in available cash – exceeding initial projections by more than $140 million.

Despite having access to over $140 million in extra cash, the Debtors continued to argue to the Bankruptcy Court that the DIP Loan was necessary because the $140 million in extra cash was a temporary anomaly, focusing the Court's attention on the civil unrest in our nation and the COVID pandemic. Time, however, would once again prove that JC Penney's "projections" were wrong.  In fact, as of August 1, 2020, the Debtor's Net Cash Flow exceeded its budget projection by 229.4%, and the Debtors accumulated $721 million **more** in short-term investment funds than they had projected to the Bankruptcy Court.  Over the objection of the shareholders, the Bankruptcy Court approved the $900 million DIP Loan.

Once the Debtors obtained the DIP financing, they embarked on the second part of their scheme.  To obtain possession of the Debtors business, a Motion pursuant to §363 was filed seeking authority from the Bankruptcy Court to sell substantially all of their assets to the First Lienholder (the "Sale").  The Sale Motion, in its most basic terms, provides for a sale of

substantially all of the Debtor's assets to the First Lienholders through their use of a **credit bid of $1 billion**. However, at the time of the sale (by credit bid), the Debtor had **$1.3 billion in cash** and approximately **$2 billion in inventory**. In other words – transfer all of the Debtor's assets to the First Lienholders, for a reduction of outstanding debt, resulting in an immediate return of 3X, without even considering the ongoing commercial value of the operating business.  All without a vote of the creditors or the Shareholders, and without a valuation of any kind.

Not only did the DIP Lenders purchase the assets with a credit bid for well below fair market value, but all potential bankruptcy claims (commonly referred to as Chapter 5 claims) against the Management Team were included in the sale, ensuring that the Management Team could never be held accountable for receiving astronomical bonuses on the eve of bankruptcy, totaling additional millions of dollars.

The Shareholders objected to the Sale Motion, and argued that the proposed Sale as outlined above, and also showed that the sale was an improper *sub rosa* Chapter 11 Plan in violation of current Fifth Circuit Law.  Instead of providing for the sale in a Chapter 11 plan, the Debtor chose to do it through a sale motion -  a legally prohibited attempt to circumvent the strict requirements and creditor protections set forth in the Bankruptcy Code. Over the Shareholders objections, the Bankruptcy Court approved the Sale.

As a result, the Shareholders have appealed the Bankruptcy Court's order allowing the sale of substantially all of the Debtor's assets to the First Lienholders. The Shareholders have filed this *Motion for Stay Pending Appeal,* and respectfully request this Court to grant a stay before the assets are transferred.  As described in detail below, the Shareholders will show that there is likelihood of success on the merits of this appeal, as the Sale is an improper *Sub Rosa* chapter 11 plan that violates Fifth Circuit Law.  The Shareholders will suffer irreparable injury if the stay is not granted because the assets will be sold before the Court can rule on the appeal.  Finally, the granting of the stay will not substantially harm the Debtors or the Purchasers as the purchasers are essentially the same entities that have and have had a lien on all of the Debtors' property. Finally, granting of the stay will best serve the public interest due to the serious legal questions involved and the potential for continued abuse with complex bankruptcy filings.

4

## RELIEF REQUESTED

1.      "A sale, use, or lease of property under § 363(b) is not *per se* prohibited even though it purports to sell all, or virtually all, of the property of the estate, but such sales (or proposed sales of the crown jewel assets of the estate) are subject to special scrutiny." *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 422 (Bankr. S.D. Tex. 2009).  That special scrutiny is necessary, *inter alia*, to ensure that debtors do not short circuit the requirements of 11 U.S.C. § 1101 *et seq.* for confirmation of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with the sale of assets.  *In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983).

2.      The sale approved by the Bankruptcy Court in the Debtors' bankruptcy cases exemplifies the potential for such abuses and injustices and must be overturned.  As set forth herein, the AHEC seeks to stay the Bankruptcy Court's November 9, 2020 *Order (I) Authorizing (A) Entry Into and Performance Under the asset Purchase Agreement and (B) the Sale of the OpCo Acquired Assets and the Propco Acquired Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, and (C) Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [ECF # 1814] (the "Sale Order").

3.      The AHEC respectfully submits that an immediate stay of the Sale Order is appropriate because (i) the AHEC is likely to succeed on the merits of the appeal in light of the legal errors committed by the Court in approving the Transactions and the *sub rosa* plan of reorganization contemplated by the Sale Order; (ii) the AHEC will suffer substantial and irreparable harm if an immediate stay is not issued; (iii) the irreparable harm to the AHEC far exceeds the potential for harm to other parties in interest if the stay is granted, and the balance of equities favors the AHEC; and (iv) the public interest weighs heavily in favor of granting the stay. Accordingly, there is no justification for further impairing the AHEC's rights by denying a stay of the Sale Order.

## BACKGROUND

4.      On May 15, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief (the "Bankruptcy Cases") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Bankruptcy Court").  On that same date, this Court entered an *Order Directing Joint Administration of Chapter 11 Cases* [ECF # 4].

5.      On May 28, 2020, Rahul Shekatkar, on behalf of shareholders, filed a motion [ECF # 319] to dismiss these Bankruptcy Cases, or in the alternative, appoint an equity committee. A hearing was held on the motion on June 6, 2020, and an agreement was reached on the record to appoint an ad hoc equity committee. Pursuant to that agreement, on June 10, 2020, this Court entered the *Order Regarding Shareholders' Motion to Dismiss Cases, or in the Alternative, to Appoint an Equity Committee* [ECF # 680] which ordered the formation of the AHEC.

6.      On October 14, 2020, the AHEC filed its *Emergency Motion to Vacate Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [ECF # 1573] (the "Rule 60 Motion") seeking to vacate the Bankruptcy Court's Final DIP Order [ECF # 566] or, at a minimum, eliminate the roll up of secured debt, because it gave the DIP Lenders exceptional power to dictate the destiny of these Debtors.

7.      On October 20, 2020, the Debtors filed their *Emergency Motion for Entry of an Order (I) Authorizing (A) Entry into and Performance under the Asset Purchase Agreement, (B) the Sale of the OpCo Acquired Assets and the PropCo Acquired Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, and (C) Assumption and Assignment of Executory Contracts and*

*Unexpired Leases and (II) Granting Related Relief* [ECF # 1592] (the "<u>Sale Motion</u>"), seeking authorization to consummate the sale transactions (the "<u>Transactions</u>") contemplated in the Asset Purchase Agreement.[4]

8.      The AHEC filed its *Objection* [ECF # 1715] to the Sale Motion on November 1, 2020.  In its Objection, the AHEC expressly objected to the Debtors' request for a waiver of the stay imposed by Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

9.      The Bankruptcy Court held a hearing on the Sale Motion on November 9, 2020 (the "<u>Sale Hearing</u>").   At the conclusion of the Sale Hearing, the Bankruptcy Court overruled the AHEC's Objection to the Sale Motion and entered the Sale Order.  The Bankruptcy Court also denied the AHEC's Rule 60 Motion, and refused to consider the AHEC's oral motion for stay of the Sale Order pending appeal.

10.     The Sale Order expressly waives the stay imposed by Bankruptcy Rule 6004.  Sale Order, ¶ 83.  The Sale Order further provides that "[t]he Transaction does not constitute a *sub rosa* chapter 11 plan.  The Transaction neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a chapter 11 plan for any of the Debtors."  Sale Order, ¶ Z.

## BASIS FOR RELIEF REQUESTED

**A.      <u>Legal Standard for Granting a Motion for Stay Pending Appeal</u>**

11.     The Fifth Circuit employs a four part test in determining whether to grant a stay pending appeal: (i) whether the movant has made a showing of likelihood of success on the merits; (ii) whether the movant has made a showing of irreparable injury if the stay is not granted; (iii) whether the granting of the stay would substantially harm the other parties; and (iv) whether the

granting of the stay would serve the public interest.  *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982); *accord Arnold v. Garlock, Inc.*, 278 F.3d 426, 438-39 (5th Cir. 2001).

12.     The Fifth Circuit, however, "has refused to apply these factors in a rigid mechanical fashion."  *Reading & Bates Petroleum Co. v. Musslewhite*, 14 F.3d 271, 272 (5th Cir. 1994). Accordingly, some courts within the Fifth Circuit have determined that "the absence of any one factor is not fatal to a successful motion for stay."  *In re Permian Producers Drilling, Inc.*, 263 B.R. 510, 515 (W.D. Tex. 2000) (citing *In re First S. Savs. Ass'n*, 820 F.2d 700, 709 n. 10 (5th Cir. 1987).  The AHEC respectfully submits that each of the foregoing factors are satisfied under the circumstances, and that a stay of the Sale Order is necessary and appropriate pending appellate review.

**B.       The AHEC is Likely to Succeed on Appeal**

13.     A movant must first show a likelihood of success on the merits of the appeal.  In cases where a movant cannot show a *likelihood* of success, the first prong can still be satisfied when the movant can "present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Arnold*, 278 F.3d at 439.  In cases where the movant cannot show a likelihood of success, the other three factors must weigh heavily in favor of a stay.  *See Vine v. PLS Fin. Servs.*, 2019 WL 4257108, at *6 (E.D. Tex. Sept. 9, 2019).

14.     A serious legal question is one that might have far-reaching effects of public concern.  *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23-24 (5th Cir. 1992).  Further, when an appeal deals with "questions involving the application of law, or when the law has not been definitively addressed by a higher court, the movant more easily satisfies the first element."

*In re Tex. Equip. Co., Inc.*, 283 B.R. 222, 227 (Bankr. N.D. Tex. 2002) (citing *In re Westwood Plaza Apartments*, 150 B.R. 163, 168 (Bankr. E.D. Tex. 1993)) (internal citations omitted).

　　　i.　　*The AHEC is likely to succeed on the merits.*

　　15.　　The AHEC is likely to succeed on the merits of this appeal due to the Bankruptcy Court's error in approving the *sub rosa* plan and entry of the Sale Order absent a showing of sound business judgment by the Debtors.　Specifically, the Bankruptcy Court approved the sale Transactions notwithstanding: (i) the Debtors' failure to demonstrate a sound business reason for the proposed sale as required by *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Continental Airlines, Inc.)*, 780 F.2d 12223, 1226 (5th Cir. 1986); and (ii) the Debtors' failure to demonstrate that the Transactions do not violate Fifth Circuit law as an invalid *sub rosa* plan under *In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir. 1983) and *In re Gulf Coast Oil Corp.*, 404 B.R. 407 (Bankr. S.D. Tex. 2009).

　　16.　　Here, the record conclusively establishes that the Debtors' sole reason for pursuing a sale under section 363 of the Bankruptcy Code was the inability to negotiate a consensual restructuring plan with its secured lenders. Further, the Debtors' only basis for needing to complete a sale prior to plan confirmation arise from either self-created emergencies or interference from their DIP Lender.[2]　Under clear Fifth Circuit precedent, such reasons are insufficient to justify a crown jewel sale such as was approved by the Sale Order.

　　17.　　Moreover, the record establishes numerous flaws in the Debtors' alleged exercise of its business judgment.　These flaws include, but are not limited to:

- The Debtors failed to ascertain the value of their enterprise or any significant assets.

---

[2] Amongst other errors, the Bankruptcy Court excluded evidence offer by the AHEC conclusively establishing that the DIP Lenders were aware that its actions were damaging the Debtors' vendor relationships and refused to timely respond.

- Relatedly, the Debtors are unable to show that the value of their assets is depreciating.

- The Debtors failed to consider the impact of the sale upon creditor recoveries and did not evaluate whether alternative outcomes would produce greater recoveries.

- The record establishes that interference and manipulation from at least one member of the DIP Lender group tainted the marketing process and chilled participation.

- The DIP Lenders' use of its credit bid is contrary to public interests – used to depress recoveries to the Debtors' estate and capture a windfall for the DIP Lenders.

*ii.      This appeal involves a serious legal question.*

18.      However, not only is the AHEC likely to succeed, but the issues in this appeal involve serious legal questions regarding approval of *sub rosa* plans that have far-reaching effects of public concern regarding the strict mechanics of the statutory scheme imposed by the Bankruptcy Code, which was specifically designed to protect the rights of creditors and other parties in interest.  Alternatively, even if this Court finds that the AHEC has only demonstrated a substantial case on appeal, rather than likelihood of success, all three of the remaining factors still weigh heavily in the AHEC's favor and a stay of the Sale Order should still be granted.

**C.      Immediate and Irreparable Injury Will Occur to Holders of Equity Interests in the Debtors if the Court does not Issue a Stay**

19.      The second question is whether the movant will be irreparably injured absent a stay. *United States v. Transocean Deepwater Drilling, Inc.*, 536 F. App'x 358, 362 (5th Cir. 2013). Courts consistently find that the irreparable harm requirement is satisfied when an appellant's right would be vitiated absent a stay.  For example, the District Court for the Southern District of New York, in issuing a stay pending appeal of the bankruptcy court's confirmation order, has emphasized that the loss of appellate review is a "quintessential form of prejudice."  *ACC Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 347-48 (S.D.N.Y. 2007).  In that case, the court concluded that "where the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of error, the irreparable harm requirement is

satisfied." *Id.* at 348; *see also Manges v. Seattle-First Nat'l Bank (In re Manges)*, 29 F.3d 1034 (5th Cir. 1994); *In re Texas Equip. Co., Inc.*, 283 B.R. 222, 228 (Bankr. N.D. Tex 2002) (explaining that unless the party obtains a stay of a sale order, there would be no effective remedies).

20.     Here, absent a stay pending appeal, the Debtors will close the sale as authorized by the Sale Order, and all parties in interest will be irreparably injured by the failure to obtain a stay. Specifically, the Sale Order authorized and approved the Debtors' *sub rosa* plan of reorganization, and fixed all of the recoveries available to the Debtors' creditor constituencies outside of a true plan of reorganization process where parties are ordinarily afforded an opportunity to vote to accept or reject a proposed sale by debtors.  Moreover, given the procedural posture of the Bankruptcy Cases, the Debtors will move through the confirmation process absent a stay pending appeal, and the AHEC's appeal will become moot.

### D.     The Balance of Equities Heavily Favors the AHEC

21.     "The third factor requires this Court to balance the hardship of the parties and find whether the harms outweigh any likely irreparable injury to the movant absent a stay." *In re Dernick*, 2019 WL 236999, at *4 (Bankr. S.D. Tex. Jan. 16, 2019) (citing *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013)).

22.     The balance of hardships unquestionably favors a stay of the Sale Order.  Since the Petition Date, the Debtors' own financials and monthly operating reports have demonstrated the Debtors' remarkable ability to generate cash.  While their liquidity cushion continued to build month over month during this time, the Debtors maintained the *status quo* in the Bankruptcy Cases for more than five (5) months while parties were largely kept in the dark regarding their

reorganization efforts.  Then, in October 2020, the Debtors filed their emergency Sale Motion and requested approval of the impermissible Transactions in a compressed time frame.

23.     While the Debtors will urge this Court, just as they did with the Bankruptcy Court, that their need for speed in administrating their Bankruptcy Cases disfavors a stay, the fact remains that their perceived need for speed is derived directly from self-created emergencies and lender-imposed deadlines.  If a stay of the Sale Order were granted, the *status quo* would continue to be maintained pending appeal, just as it had been maintained for months during the Bankruptcy Cases while the Debtors raked in the cash and dragged out the process to the detriment of all creditor constituencies. If the Debtors area so incredibly confident that their Transactions will pass muster on appellate review just as they were at the Sale Hearing, they should have no issue continuing to build on their resounding operational successes during the pendency of this appeal.

24.     Moreover, as reflected by the record, the Bankruptcy Court acknowledged that the AHEC and its constituents are largely comprised of individual investors, many of whom lack an understanding of the bankruptcy process, and most of whom stand to suffer significant financial losses as a result of the Transactions approved by the Sale Order.  Absent a stay of the Sale Order, "effective judicial relief would be no longer available, even though there may still be a viable dispute between the parties on appeal."  *In re Manges*, 29 F.3d at 1039.

25.     In light of the foregoing, the AHEC submits that this irreparable harm factor weighs heavily in favor of granting the stay of the Sale Order. The AHEC and its constituents would have no feasible means of prosecuting their viable dispute on appeal if a stay of the Sale Order cannot be obtained.

E.      **Granting a Stay is in the Public Interest**

26.     The final question is whether a stay serves the public interest. Public policy generally favors speedy resolution of disputes, as well as the efficient allocation of judicial resources. *See Weingarten Realty Inv'r v. Miller*, 661 F.3d 904, 913 (5th Cir. 2011).

27.     The AHEC submits that this factor weighs heavily in favor of granting a stay of the Sale Order because there is an overwhelming public interest in preserving the integrity of the statutory right of appellate review in an expeditious and efficient manner:

> The ability to review decisions of the lower courts is the guarantee of accountability in our judicial system.  In other words, no single judge or court can violate the Constitution or the laws of the United States, or the rules that govern court proceedings, with impunity, because nearly all decisions are subject to appellate review.  At the end of the appellate process, all parties and the public accept the decision of the courts because we, as a nation, are governed by the rule of law.  Thus, the ability to appeal a lower court ruling is a substantial and important right.

*ACC Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 377 (S.D.N.Y. 2007).

28.     Additionally, the public interest and the policies underlying the Bankruptcy Code are best protected by enforcing the statutory scheme imposed by Congress which was explicitly designed to protect the rights of creditors and other parties in interest from impermissible *sub rosa* plans.  Here, the statutory right of appellate review will be completely undermined by a quick closing of the sale authorized by the Sale Order.  Further, there is a strong public interest in a court adhering to jurisdictional, statutory, and constitutional limitations and recognizing a party's rights under applicable law.  To the extent the Court permits the Transactions to close immediately as contemplated by the Sale Order, the law prohibiting impermissible *sub rosa* plans would be rendered utterly meaningless.  This Court should grant a stay of the Sale Order pending appeal of these important issues.

**F.     Waiver to Post Bond**

29. Further, given the irreparable harm described above, the AHEC and its constituents have virtually no means of filing a bond or other security as described in Bankruptcy Rule 8007(c). *See* FED. R. BANKR. P. 8007(c) (stating that relief ***may*** be conditioned on filing a bond or other security) (emphasis added); *See also Silverman v. Nat'l Union fire Ins. Co. (In re Suprema Specialties, Inc.)*, 330 B.R. 93, 96 (S.D.N.Y. 2005) (posting a bond is discretionary and not a prerequisite to obtaining a stay pending appeal). Even when a supersedeas bond is required, the requirement may be waived if posting a bond would result in "undue economic hardship." *Waffenschmidt v. Mackay*, 763 F.2d 711, 727 (5th Cir. 1985) (citing *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979); *United States v. Owen*, 2000 U.S. Dist. LEXIS 19036, *2 (E.D.La. Dec. 26, 2000) (same).

30. In this case, it would be the height of injustice to render the AHEC without an adequate path for appellate review by imposing such an insurmountable legal hurdle, and this Court has substantial discretion to grant a stay pending appeal even if a supersedeas bond cannot be obtained by the AHEC. *In re Fiesta Inn & Suites, LP*, 2009 Bankr. LEXIS 4176, *3-5 (Bankr. W.D.Tex. Dec. 21, 2009) (explaining that a court has substantial discretion under the Bankruptcy Rules to grant or deny a stay pending appeal on appropriate terms when no supersedeas bond is obtained).

31. JC Penney is well aware and depends on this legal hurdle to be the end of this appeal as the equity holders have no means. The AHEC employed the undersigned counsel on a contingency fee basis as they don't have the funds to fight this battle with First Lienholders who fund attorneys who charge in excess of $1,300.00 per hour. In fact, prior to filing this Motion the undersigned counsel reached out to Debtor's counsel regarding their position on the relief requested in this Motion and the response received had nothing to do with the pleading requirements for a stay pending appeal, focusing entirely on AHEC's obvious inability to post a bond.

14

32. This Court has substantial discretion to grant a stay even if a bond cannot be obtained and the Equity holders will be left with no path for appellate review without it. The AHEC respectfully pleads that the Court provide them with a chance.

**33.**   **Conclusion**

34.   As demonstrated above, the AHEC has shown that: (i) there is likelihood of success on the merits of this appeal; (ii) the AHEC would suffer irreparable injury if the stay is not granted; (iii) the granting of the stay would not substantially harm the Debtors or purchasers; and (iv) the granting of the stay would best serve the public interest due to the serious legal questions involved and potential for abuse of the bankruptcy process.  Accordingly, the standards for imposition of a stay pending appeal are met, and the AHEC respectfully requests that the Court grant the relief requested in this Motion.

**STATEMENT PURSUANT TO BANKRUPTCY RULE 8007(b)(2)**

35.   Pursuant to Bankruptcy Rule 8007(b)(2), the AHEC respectfully submits that the filing of this Motion in this Court is necessary and appropriate under the circumstances.  As set forth above, the AHEC sought a denial of the Debtors' request for a waiver of the statutory stay ordinarily imposed by Bankruptcy Rule 6004.  The Bankruptcy Court overruled the AHEC's Objection and entered the Sale Order, expressly waiving the stay.  At the conclusion of the Sale Hearing, the AHEC made an oral motion for a stay pending appeal, which the Bankruptcy Court declined to rule on.  In light of this and the emergency timeline imposed for obtaining relief before the Transactions close, the AHEC respectfully submits that moving first to file this Motion in the Bankruptcy Court would be impracticable and fruitless based on the record of what occurred before

15

the Bankruptcy Court.[3]  Accordingly, pursuant to Bankruptcy Rule 8007(b)(1), the AHEC submits

that this Motion should be heard by this Court where the appeal is pending.

### EMERGENCY CONSIDERATION

36.     Emergency relief is requested as soon as the Court's calendar permits, but not later

than November 23, 2020 – fourteen (14) days after entry of the Sale Order.  Pursuant to the Sale

Order, the Debtors may close the Transactions at any time due to the Bankruptcy Courts waiver of

the stay imposed by Bankruptcy Rule 6004.  For the reasons mentioned above, the AHEC will be

immediately and irreparably harmed if the sale closes.  As a result, the AHEC requests that the

Court enter an order granting the relief requested in this Motion on an emergency basis.

### PRAYER

**WHEREFORE**, the AHEC respectfully requests that the Court enter an order, substantially

in the form submitted herewith: (i) granting the relief requested in this Motion and staying the Sale

Order; and (ii) granting the AHEC such other and further relief as the Court deems just and proper.

Dated: <u>November 15, 2020</u>.

---

[3] With respect to impracticability, it has been stated that: "it would seem that a showing of impracticability would normally require a showing that the [bankruptcy] judge is unavailable, or that, to be effective, relief must be immediate, and that based upon what occurred in the [bankruptcy] court, relief from it is improbable." COLLIER ON BANKRUPTCY, 15th Ed. Rev. ¶ 8007.08 (quoting 20 Moore's Federal Practice, § 308.40 (Matthew Bender 3d ed.)).

Respectfully submitted,

By: _/s/Johnie Patterson_
Johnie Patterson
SBN 15601700
Miriam Goott
SBN 24048846
**ATTORNEYS FOR THE AD HOC
COMMITTEE OF EQUITY
INTEREST HOLDERS**

OF COUNSEL:
WALKER & PATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208-1301
(713)956-5577 Phone
(713)956-5570 Fax
jjp@walkerandpatterson.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion was served on November 15, 2020 via the Court's CM/ECF system to all parties consenting to service through the same.

By: _/s/Johnie Patterson_
Johnie Patterson

17